FILED
SUPERIOR COURT
OF GUAM

2022 MAY 19 PM 4:58

CLERK OF COURT

BY:_____

## IN THE SUPERIOR COURT OF GUAM

| | |
|---|---|
| NAS CONSULTING SERVICES and SEAN YI,<br><br>Plaintiffs,<br><br>vs.<br><br>BROADCAST PROPERTIES, INC.,<br><br>Defendant. | CIVIL CASE NO. CV0642-21<br><br><br>**DECISION AND ORDER GRANTING BROADCAST PROPERTIES, INC.'S MOTION TO DISMISS** |

This matter came before the Honorable Dana A. Gutierrez on February 18, 2022 for a hearing on Defendant Broadcast Properties, Inc.'s ("Broadcast") Motion to Dismiss Complaint ("Motion"). Present via Zoom were Attorney Edwin J. Torres representing Plaintiffs Nas Consulting Services ("Nas Consulting") and Sean Yi ("Yi") (collectively, "Plaintiffs"); and Attorney Martin F. Deinhart representing Broadcast. Upon a review of the briefings and in consideration of the arguments presented by the parties, the Court now issues this Decision and Order **GRANTING** the Motion.

## PROCEDURAL BACKGROUND

The instant matter arises out of Plaintiffs' Complaint filed on August 23, 2021 asserting a Breach of Contract claim against Broadcast. On September 10, 2021 Broadcast filed a Motion to Dismiss Complaint citing to Rule 12(b)(6) and Rule 56 of the Guam Rules of Civil Procedure ("GRCP") alleging that the Complaint fails to state a claim upon which relief can be granted. Motion, at 4.

On October 7, 2021, Plaintiffs filed their Opposition to Motion to Dismiss. Broadcast filed its Reply on October 22, 2021. The Court heard oral argument from the parties on February 18, 2022 and took the matter under advisement.

## FACTUAL BACKGROUND

The Complaint alleges that on December 21, 2020, Broadcast entered into a lease agreement with Nas Consulting (the "Lease") for the use of Building B Unit 107 Kitchen, Building B Unit 108, and Building B patio (collectively, the "Property"). Compl., at ¶ 7. The Complaint alleges that the initial term of the Lease was for three (3) months commencing January 18, 2021, with an option to extend the term for one (1) year "once allowance of indoor occupancy reaches one hundred percent (100%")" and airport resume [sic] normal operation with the airlines or at your execution of this option." *Id.* at ¶ 14-15, Exhibit A.

Additionally, the Lease states that "[u]pon completion of the initial there [sic] (3) month lease period and until one hundred percent (100%) occupancy is allowed, the tenant will have the option to extend on a month to month basis at the $3,000 per month rate until the option to extend for one years kicks in." *Id.* at ¶ 17, Exhibit A. The Complaint asserts that Plaintiffs have "duly paid the monthly amounts due under the Lease and performed all obligations required by the Lease," renewing the Lease each month as required by the Lease's terms. *Id.* at ¶ 19-20.

Plaintiffs allege that on March 8, 2021, Broadcast sent a letter to Yi stating that the Lease "grants to you the right to use the described spaces from January 18, 2021 for three months. Therefore, the termination date is April 18, 2021. This letter is to advise you that the owner, Broadcast Properties, Inc., will terminate the use of the described spaces on April 18, 2021. You must vacate the described spaces on or before that date." *Id.* at ¶ 21, Exhibit B. The Complaint asserts that on April 9, 2021, Yi responded to Broadcast's letter stating that their March 8, 2021

letter constituted a material breach of the Lease. *Id.* at ¶ 22. Yi's letter further stated that Yi intended to "vacate the premises in order to keep the peace" and demanded $250,000 "in order to avoid future litigation." Decl. of Mei Hui Sorensen, Exhibit 1 (Sept. 10, 2021).

## DISCUSSION

### I. Broadcast's Motion to Dismiss Must Be Converted to a Rule 56 Motion for Summary Judgment.

Broadcast's Motion cites to Rule 12(b)(6) but states that Rule 12 allows the Court to treat a 12(b)(6) motion as one for a Rule 56 summary judgment if matters outside the pleadings are raised in the motion. Motion, at 2. Rule 12(b)(6) of the GRCP allows a plaintiff to assert in a responsive pleading or in a motion that the defendant failed to state a claim upon which relief could be granted. Guam R. Civ. P. 12(b)(6); *First Hawaiian Bank v. Manley*, 2007 Guam 2 ¶ 9.

Dismissal pursuant to Rule 12(b)(6) of the GRCP "is not proper unless 'it appears beyond doubt that the Plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Id.* "In ruling on a 12(b)(6) motion, a court's consideration is limited to the complaint, written instruments attached to the complaint as exhibits, statements or documents incorporated in the complaint by reference, and documents on which the complaint heavily relies." *Newby v. Gov't of Guam*, 2010 Guam 4 ¶ 14.

However, in ruling on a Rule 12(b)(6) motion to dismiss, a trial court "must convert the dismissal motion into a summary judgment motion **whenever it considers extraneous material outside the pleadings**." *Core Tech Int'l Corp. v. Hanil Eng'g & Const. Co., Ltd.*, 2010 Guam 13 ¶ 26-29. Where a plaintiff attaches a declaration to their opposition to a motion to dismiss, the Supreme Court, in *Core Tech v. Hanil*, held that the trial court should consider the attached declarations and other documents and convert the motion to one for summary judgment. *Id.* at ¶

3

26, note 4.

Here, Broadcast submits the Declaration of Mei Hui Sorensen and attaches an additional document not included in the Complaint in support of their Motion to Dismiss. Decl. of Mei Hui Sorensen, Exhibit 1. The document is Yi's April 9, 2021 letter responding to Broadcast. *Id.* Because the Court must consider these documents and the information therein, which were not included in the Complaint and its accompanying exhibits, the Court finds that it must convert Broadcast's Motion to a Motion for Summary Judgment.

## II.     Standard for a Motion for Summary Judgment.

Pursuant to Rule 56(c) of the GRCP, summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." A genuine issue exists when "there is 'sufficient evidence' which establishes a factual dispute requiring resolution by a fact-finder." *Iizuka Corp. v. Kawasho Int'l (Guam) Inc.*, 1997 Guam 10 ¶ 7. The factual dispute must concern a material fact. *Id.* "A 'material fact' is one that is relevant to an element of a claim or defense and whose existence might affect the outcome of the suit . . . [d]isputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment." *Id.*

In addition, "the court must view the evidence and draw inferences in the light most favorable to the non-movant." *Edwards v. Pacific Financial Corp.*, 2007 Guam 27 ¶ 7. The court's "ultimate inquiry is to determine whether a 'specific fact' set forth by the nonmoving party, coupled with the undisputed background or contextual facts, are such that a rational or reasonable jury might return a verdict in its favor based on that evidence." *Iizuka*, 1997 Guam

¶ 8. This standard will guide the Court in its analysis.

### A.     There Are No Genuine Issues of Material Fact.

When determining whether a material fact exists, "if the movant can demonstrate that there are no genuine issues of material fact, the non-movant cannot merely rely on allegations contained in the complaint, but must produce at least some significant probative evidence tending to support the complaint." *Moylan v. Citizens Sec. Bank*, 2015 Guam 36 ¶ 23. "A genuine issue exists when there is 'sufficient evidence' which establishes a factual dispute requiring resolution by a fact-finder . . . However, the dispute must involve a 'material fact.'" *Government of Guam v. Gutierrez*, 2015 Guam 8 ¶ 25 (internal citations omitted).

In this case, Plaintiffs' Complaint asserts that Broadcast's March 8, 2021 letter terminated the Lease Agreement which constituted a material breach of the Lease Agreement. Compl., at ¶ 22-25. Plaintiffs' Opposition further specifies that Broadcast's Motion should be denied because Yi treated the March 8, 2021 letter as an "anticipatory breach," and Plaintiffs were authorized to "treat the repudiation as an anticipatory breach and immediately seek damages for breach of contract." Opp., at 2-3.

The issue of whether "anticipatory repudiation" has occurred may sometimes be an issue of fact for the fact-finder to decide. *See* 1 Neb. Prac., NJI2d Civ. 15.01 ¶ VIII (West 2021). However, the issue of whether, known, undisputed facts constitute repudiation is a question of law that may be decided through a motion to dismiss or a motion for summary judgment. *Id.*; *Truman L. Flatt & Sons Co., Inc. v. Schupf*, 649 N.E.2d 990, 993-94 (Ill. App. Ct. 1995) (where there were no disputed facts so whether the plaintiffs committed anticipatory repudiation of the contract was a question of law to be decided through summary judgment); *In re Wansdown*

5

*Properties Corp. N.V.*, 620 B.R. 487, 500 (Bankr. S.D.N.Y. 2020 ("Ordinarily, anticipatory repudiation presents a question of fact but when the anticipatory repudiation is expressed in writing it may be decided as a question of law."). The fact question is whether facts *exist*, while the question of law is whether the facts, when they do exist, constitute repudiation. 1 Neb. Prac., NJI2d Civ. 15.01 ¶ VIII (West 2021).

Here, the material facts relevant to Plaintiffs' breach of contract claim—the only cause of action asserted in the Complaint—are based on the language contained in the Lease Agreement, Broadcast's March 8, 2021 letter to Yi, and Yi's April 9, 2021 letter to Broadcast. The parties do not dispute the contents of these documents, nor do the Plaintiffs' allege that any other relevant documents or communications among the parties exist that may constitute additional material facts. *See* Motion, Opp., Reply; Min. Entry (Feb. 18, 2022).

Plaintiffs' Opposition does not identify any facts put forth by Broadcast that Plaintiffs dispute. Opp., at 3-4. When asked by the Court whether there are any disputed facts and if so, to identify them, Plaintiffs, by and through counsel, did not direct this Court to any facts that are disputed. Min. Entry (Feb. 18, 2022). Instead, Plaintiffs asserted that whether the tenant could have exercised the option to extend the lease and the parties' intent are questions of fact. *Id.*

Despite these assertions, a court's interpretation of undisputed facts and the ultimate conclusion to be drawn from them respecting intention is appropriately decided through summary judgment. *Fox v. Johnson & Wimsatt*, 127 F.2d 729, 736-37 (D.C. 1942) ("There was conflict concerning interpretation of the facts and the ultimate conclusion to be drawn from them respecting intention. But here was none as to the facts themselves. In other words, the evidentiary facts were not substantially in dispute.") (where the court affirmed the dismissal of

an action for specific performance of a contract through summary judgment); *see B.M. Co. v. Avery*, 2001 Guam 27 at ¶ 9 ("When the trial court looks merely to the contract language in interpreting the contract, and not to extraneous facts, the court's interpretation is a legal conclusion[.]").

Plaintiffs did not meet their burden to provide the Court with "significant evidence" that any disputed facts exist outside the contents of the Lease Agreement, the March 8, 2021 letter, and the April 9, 2021 letter, that would be necessary for the Court, or a fact-finder, to consider in determining whether Broadcast committed an anticipatory breach as a matter of law. *Id.*; *Gutierrez*, 2015 Guam 8 ¶ 25; *see Children of America (Cortlandt Manor), LLC v. Pike Plaza Associates, LLC*, 113 A.D.3d 583, 584 (N.Y. App. Div. 2014) (where the tenant's letter offering options for modifying terms of the lease did not constitute anticipatory repudiation as a matter of law, but triable issues of fact remained as to whether the tenant orally expressed an unequivocal intention to not perform). Merely asserting that facts are in dispute without identifying which facts those may be and without providing "sufficient evidence" of those facts is not sufficient for a finding that genuine issues of material fact exist. *See Gutierrez*, 2015 Guam 8 ¶ 25

It is insufficient to merely rely on the allegations put forth in the Complaint when refuting the moving party's demonstration that no genuine issue of material fact exists. *Moylan*, 2015 Guam 36 ¶ 23. Neither the Plaintiffs' assertions at the February 18, 2022 Motion Hearing, nor the Plaintiffs' Opposition, set forth any additional evidence that was not already presented in the Complaint. Because mere reliance on allegations in the Complaint are insufficient, Plaintiffs failed to direct this Court to facts which are disputed, and Plaintiffs have not provided the Court with "significant evidence" establishing that any factual dispute exists, this Court finds that there

are no genuine issues of material fact in this case.

### B. Broadcast Did Not Commit Anticipatory Breach As a Matter of Law.

Plaintiffs assert that if the Court converts Broadcast's Motion to a Motion for Summary Judgment, then the Lease Agreement, the March 8, 2021 letter sent by Broadcast, and the April 9, 2021 letter sent by Yi present undisputed facts that the Court should use to find summary judgment in favor of Plaintiffs. Opp., at 4. Plaintiffs assert that Broadcast's March 8, 2021 letter prevented "Plaintiffs from exercising their option granted to them under the Lease" which constituted an "anticipatory breach" of the Lease Agreement. *Id.* at 5-6. Thus, Plaintiffs request that the Court grant summary judgment in their favor. *Id.* at 6.

In response, Broadcast argues that Plaintiffs cannot point to any statement in the March 8, 2021 letter that specifically informs Plaintiffs that their option to extend the lease has been repudiated. Reply, at 3. Broadcast further argues that Plaintiffs' April 9, 2021 letter admits that the March 8, 2021 letter does not deprive the Plaintiffs of their option to extend the lease. *Id.* at 3-4.

The Guam Supreme Court has not addressed the definition of an anticipatory breach as a cause of action. With regard to the standard for finding an anticipatory breach, the Restatement (Second) of Contracts provides that:

> A repudiation is:
> (a) a statement by the obligor to the obligee indicating that the obligor will commit a breach that would of itself give the obligee a claim for damages for total breach under § 243, or
> (b) a voluntary affirmative act which renders the obligor unable or apparently unable to perform without such a breach.

Restatement (Second) of Contracts § 250 (1981) (internal citations omitted).[1]

Williston on Contracts explains that:

It is invariably stated in the decisions that in order to give rise to an anticipatory breach of contract, the defendant's refusal to perform must have been positive and unconditional. The rule has alternately been stated that the repudiating party must communicate "unequivocally and positively its intention not to perform"; "clearly and expressly" communicate its intention not to perform; communicate a "positive, unequivocal or distinct renunciation" of the agreement; or "unequivocally signif[y] its intent to breach the contract"; or that the repudiation be a "definite and unequivocal manifestation" of the intention not to render performance; be "clear and unequivocal"; "evinc[e] a 'distinct, unequivocal, and absolute refusal to perform according to the terms of the agreement'"; or be "entire, absolute, and unequivocal."

23 Williston on Contracts § 63:45 (4th ed. West 2022) (internal citations omitted).

### 1. Broadcast's Performance Requirements under the Lease Agreement.

Because anticipatory breach is the "unequivocal and positive" statement by an obligor of the obligor's intention to not perform, this Court must first identify Broadcast's promised "performance" under the terms of the Lease Agreement. *Id.* Under Guam law, a contract's "plain meaning" is to be ascertained by looking to the "four corners" of the contract. *Wasson v. Berg*, 2007 Guam 16 ¶ 16-17.[2]

Under the Lease Agreement, Broadcast promised Plaintiffs' the use of the Property "for an initial period of three (3) months commencing January 18, 2021" in exchange for, *inter alia*,

---

[1] In *Sananap v. Cyfred, Ltd.*, the parties entered into a Land Purchase Agreement which required Cyfred to install a sewer line on the property. *Cyfred, Ltd.*, 2009 Guam 13 ¶ 4-5. When Cyfred did not take steps to install the sewer line, the Sananaps ceased their mortgage payments and sought an injunction to prohibit Cyfred from foreclosing on the property. *Id.* at ¶ 4-11. The *Cyfred* Court directed the trial court on remand to consider "the time at which [Cyfred's] breach was anticipated" in deciding the amount owed, if any, by the non-breaching party. *Cyfred, Ltd.*, 2009 Guam 13 ¶ 76-77. In giving these instructions, the Guam Supreme Court cited the Restatement (Second) of Contracts § 251(1). *Cyfred, Ltd.*, 2009 Guam 13 ¶ 76. Therefore, this Court turns to the Restatement (Second) of Contracts in reviewing the standard for anticipatory breach.

[2] The Court notes that Plaintiffs here do not allege that the Lease Agreement is "ambiguous." Opp., at 1-6.

monthly rent in the amount of $3,000. Compl., Exhibit A. Broadcast promised that, upon compilation of the "initial there [sic] (3) month lease period and until one hundred percent (100%) occupancy is allowed, the tenant will have the option to extend on a month to month basis . . . until the option to extend for one year kicks in." *Id.* Broadcast further promised that the tenant has the "option to extend" the Lease Agreement for one (1) year "once the allowance of indoor occupancy reaches one hundred percent (100%) and airport resume [sic] normal operation with the airlines[.]" *Id.*

**2. Broadcast's Letter Was Not an Anticipatory Repudiation of Its Promises Under the Lease Agreement.**

Having identified Broadcast's promises pursuant to the Lease Agreement, the question turns on whether Broadcast's March 8, 2021 letter communicated "unequivocally and positively its intention not to perform" those promises. *See* 23 Williston on Contracts § 63:45 (4th ed. West 2022). To constitute an anticipatory repudiation, the obligor must communicate "an absolute and unequivocal refusal to perform or a distinct and positive statement of an inability to do so." *2401 Pennsylvania Ave. Corp., v. Federation of Jewish Agencies of Greater Philadelphia*, 489 A.2d 733, 736 (Penn. 1985).

For example, in *Federation of Jewish Agencies*, the tenant–the Federation–entered into a lease agreement to rent the landlord's property for a period of two years. *Id.* at 734-35. In that case, the Supreme Court of Pennsylvania held that the landlord failed to prove that the tenant committed an anticipatory repudiation of the contract where the tenant, either orally or in writing, communicated to the landlord that: 1) the lease would have no effect because it could not take possession at the time specified in the lease; 2) the tenant did not want to occupy the property because it had no use for it; and 3) the tenant would not consider any type of extension

without a release of liability from the lease. *Id.*, at 737.

As another example, in *Turner Const. Co. v. U.S. Framing, Inc.*, a subcontractor entered into a contract to obtain lumber for a construction project. *Turner*, 28 N.Y.S.3d 651, at \*1-2 (N.Y. Sup. Ct. 2015). When the contractor experienced difficulty communicating with the subcontractor regarding the lumber contract, the contractor wrote to the subcontractor via email stating that the contractor "is calling the bond in on the lumber and will be soliciting pricing from a local farmer. [Subcontrator] has made it clear that they cannot perform on this project." *Id.* at \*2. The *Turner* Court found that this email was not "an unequivocal, definite, and final expression of the contractor's intention not to perform its obligations." *Id.* at \*5.

Here, Broadcast's March 8, 2021 letter states that the Lease Agreement "grants [Plaintiffs] the right to use the described spaces from January 18, 2021 for three months." Compl., Exhibit B. Broadcast's letter elaborates, stating: "Therefore, the termination date is April 18, 2021. This letter is to advise you that the owner, Broadcast Properties, Inc. will terminate your use of the described spaces on April 18, 2021." Compl., Exhibit B. Three months from the commencement of the Lease Agreement, January 18, 2021, was April 18, 2021. Based on a plain reading of the March 8, 2021 letter and the Lease Agreement, Broadcast's aforementioned statement is not an "unequivocal, definite, and final expression" of Broadcast's intention not to perform its obligations under the Lease Agreement. *See* 23 Williston on Contracts § 63:45 (4th ed. West 2022).

Although Broadcast did not recite all of Plaintiffs' rights under the Lease Agreement, including Plaintiffs' right to exercise its option to extend on a month-to-month basis, Plaintiffs were free to—and did—review the Lease Agreement to determine what rights, if any, Plaintiffs

had under the Lease Agreement.

Plaintiffs' April 9, 2021 letter makes it clear that Plaintiffs reviewed their rights under the Lease Agreement and confirmed that the March 8, 2021 letter did not renounce Plaintiffs' right to exercise the option to extend the lease. Specifically, Yi wrote in the April 9, 2021 letter:

> As you know, the Memorandum provides for an absolute right to an option to extend for at least one (1) year, which can only be triggered by the Governor allowing indoor occupancy for dining reaching 100% and the airport resuming normal operations. Neither of those two events have occurred. Thus, I still have the ability to exercise that option. You will also note that during the option period, I have the absolute right to extend the lease under the Memorandum on a month-to-month basis "until the option to extend for one-year kicks in."

Decl. of Mei Hui Sorensen, Exhibit 1.

The language in Yi's April 9, 2021 letter demonstrates that Plaintiffs did not vacate the premises because Broadcast had unequivocally renounced Plaintiffs' right to exercise their option to extend, as Yi himself acknowledges that he "still ha[d] the ability to exercise that option." *Id.* Rather, Plaintiffs decided to "vacate the premises in order to keep the peace[.]" *Id.* Further, Plaintiffs admit that they never exercised their option to extend the Lease Agreement. Min. Entry (Feb. 18, 2022).

### 3. Instead of Seeking Assurance of Performance, Plaintiffs Chose to Vacate the Premise and Demand Damages.

Plaintiffs assert that when faced with anticipatory repudiation, Plaintiffs have the option to immediately seek damages for breach of contract. Opp., at 2. Broadcast argues that this remedy is inapplicable where the complaining party is unable to prove that an anticipatory repudiation has indeed occurred. Reply, at 4.

The determination that a breach by repudiation has occurred is often difficult to make. 23 Williston on Contracts § 63:46 (4th ed. West 2022) (internal citations omitted). In instances of

anticipatory breach, the nonbreaching party has the option to treat the repudiation as an immediate breach and maintain an action at once for the damages. *Id.* However, where the actions of the apparently repudiating party are equivocal or uncertain, this option presents the nonbreaching party with the following dilemma:

> If the promisee regards the apparent repudiation as an anticipatory repudiation, terminates his or her own performance and sues for breach, the promisee is placed in jeopardy of being found to have breached if the court determines that the apparent repudiation was not sufficiently clear and unequivocal to constitute an anticipatory repudiation justifying nonperformance. If, on the other hand, the promisee continues to perform after perceiving an apparent repudiation, and it is subsequently determined that an anticipatory repudiation took place, the promisee may be denied recovery for post-repudiation expenditures because of his or her failure to avoid those expenses as part of a reasonable effort to mitigate damages after the repudiation.

*Id.* (citing *McNeal v. Lebel*, 953 A.2d 396, 462 (N.H. 2008).

Although the Guam Supreme Court has not directly analyzed the issue of how to determine whether an anticipatory breach has occurred, the Court has referenced an obligee's solution to the aforementioned dilemma in cases where the obligee suspects that the obligor is committing an anticipatory breach. As noted in footnote one, *supra*, when Cyfred apparently took no actions towards installing the sewer line, the Guam Supreme Court acknowledged that the Sananaps may have anticipated that Cyfred had no intention of meeting its obligations. *Cyfred, Ltd.*, 2009 Guam 13 at ¶ 76. The *Cyfred* Court cited the following from the Restatement (Second) of Contracts:

> Where reasonable grounds arise to believe that the obligor will commit a breach by non-performance . . . the obligee may demand adequate assurance of due performance and may, if reasonable, suspend any performance for which he has not already received the agreed exchange until he receives such assurance.

*Id.*

Therefore, in this case, even if Broadcast's March 8, 2021 letter constituted "reasonable grounds" for Plaintiffs to believe that Broadcast intended to commit a future breach by non-performance, the more appropriate course of action would have been for Yi to demand adequate assurance of the due performance. *See* Restatement (Second) of Contracts § 251 (1981). Instead, Yi immediately demanded a payment of $250,000 and decided to "vacate the premises in order to keep the peace." Decl. of Mei Hui Sorensen, Exhibit 1.

In doing so, Yi accepted the risk that a court may later find that what he regarded as an anticipatory repudiation was not sufficiently clear and unequivocal to constitute an anticipatory repudiation. *See* 23 Williston on Contracts § 63:46 (4th ed. West 2022); *Magic Valley Foods, Inc. v. Sun Valley Potatoes, Inc.*, 10 P.3d 734, 790-91 (Idaho 2000) (where the obligee failed to seek adequate assurances of due performance of obligor and prematurely ceased its own performance, and the court found that obligee breached).

In sum, there can be no question that Broadcast's March 8, 2021 letter did not contain any statement that clearly and unequivocally repudiated Plaintiffs' right to exercise its option to extend the lease because nowhere in the March 8, 2021 letter does Broadcast make any mention regarding Plaintiffs' option or Plaintiffs' rights under the Lease Agreement. In order to unequivocally repudiate Plaintiffs' right to exercise the option, Broadcast would have had to, at the very least, make a statement about that right. Further, Yi himself admitted that he "still ha[d] the ability to exercise that option." Decl. of Mei Hui Sorensen, Exhibit 1. In the face of Broadcast's March 8, 2021 letter, Plaintiffs voluntarily chose to vacate the premises, not because he no longer had the right to exercise the option but rather, "in order to keep the peace[.]" *Id.*

Accordingly, based upon a plain reading of the Lease Agreement, Broadcast's March 8,

2021 letter, and Yi's April 9, 2021 letter, this Court finds that Broadcast did not communicate "an unequivocal, definite, and final expression" of an intention not to perform its obligations. Because Plaintiffs admit that they never affirmatively exercised their right to the option to extend, Broadcasts' March 8, 2021 letter informed Plaintiffs that the initial three-month rental period ended on April 18, 2021. In the absence of an "unequivocal and definite" repudiation of Plaintiffs' option to extend the Lease Agreement, the Court finds that Plaintiffs were free to exercise that right, but declined to do so.

## CONCLUSION

For the foregoing reasons and in accordance with the applicable law, the Court hereby **GRANTS** Broadcast's Motion to Dismiss Complaint, which has been converted to a motion for summary judgment.

**SO ORDERED:** _____MAY 1 9 2022_____

_____
**HONORABLE DANA A. GUTIERREZ**
**Judge, Superior Court of Guam**

**SERVICE VIA E-MAIL**
I acknowledge that an electronic
copy of the original was e-mailed to:
*Razzano, Walsh & Torres*
*Blair Sterling Johnson*
Date: _5/19/22_ Time:_5:03p_
                CA
_____
Deputy Clerk, Superior Court of Guam

15